# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ann C. Williams | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 93 CR 840 - 1 | **DATE** | 4/25/2000 |
| **CASE TITLE** | USA vs. GLEN WATSON | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Pursuant to the court's memorandum opinion and order the court construes Watson's motion to vacate and set aside his prison sentence as a motion to vacate and set aside judgment and sentence under 28 U.S.C. section 2255. The court denies Watson's petition for habeas corpus relief.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAY 0 2 2000 | |
| ✓ | Docketing to mail notices. | | date docketed | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | APR 26 2000 | |
| DL | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

GLEN WATSON )
)
Petitioner, )
)
v. ) Case No. 93 CR 840
)
UNITED STATES OF AMERICA, )
)
Respondent. )

DOCKETED MAY 02 2000

## MEMORANDUM OPINION AND ORDER

In January 1994, Petitioner Glen Watson ("Watson") was indicted on two separate violations of 21 U.S.C. § 841 for possession with intent to distribute heroin and cocaine and possession of a firearm in violation of 18 U.S.C. § 924(c). Watson pled guilty to the narcotics charges and waived his right to a jury trial on the firearm possession. Subsequently, the government dismissed the firearm possession charge. Watson was sentenced to a fifty-seven month prison term. Now before the court is Watson's motion to vacate and set aside his prison sentence, which the court construes as a Writ of Habeas Corpus pursuant to 28 U.S.C. §2255. For the reasons stated below, the court denies Watson's petition for habeas corpus relief.

## Background

Watson was arrested on two separate occasions, first on January 28, 1993, in Chicago and again on November 18, 1993, in Forest Park, Illinois, for knowingly and intentionally possessing narcotics with intent to distribute in violation of Title 21, U.S.C. § 841 (a)(1) and for possession of a firearm in violation of Title 18, U.S.C. § 924(c). (See Gov't Resp. Def. Filings.) In two separate searches, police found Watson in possession of narcotics and a loaded handgun. (Id. at 2.) Watson confessed to law enforcement officials that he used the gun as a source of protection while distributing narcotics. (Id.) He attempted to suppress the fruits of the search at an evidentiary hearing, but the court denied his motion. (Id.)

Following his arrest, Watson entered a guilty plea on the narcotics charges and waived the right to a jury trial on the possession of a firearm. Subsequently, the government dismissed the gun possession charge. On October 13, 1995, Watson was sentenced to a prison term of fifty-seven months for both counts of narcotics possession and fined $5,000. (See Gov't Ex. 3., Judgment and Commitment Order.) Thereafter, he filed

various petitions and letters before the court requesting immediate release from prison.[1]

Watson presents several claims in support of his request for an immediate release from prison. He argues that: (1) this court did not obtain personal jurisdiction or subject matter jurisdiction over his criminal case; (2) his arrest violated his Fourth and Fifth Amendment rights; (3) the government did not have sufficient evidence to prove that he committed the crime for which he was convicted; and (4) his prison sentence was in excess of the court's statutory authority; (5) and he received misleading plea advice from incompetent counsel (See Letter of March 27, 1997, Mot. to be Immediately Released from Illegal Detention,

---

[1] Since Watson's incarceration, he has filed numerous petitions and letters. They include: Motion to Vacate and Set Aside Void Judgment of Sentence and Conviction (filed January 31, 1997); Motion for Unsecured Bond (personal recognizance) Pending Motion to Vacate and Set Aside Void Judgment of Sentence and Conviction and Finality of Proceedings (January 31, 1997); Motion to Amend the Motion to Vacate and Set Aside Void Judgment of Sentence and Conviction (February 18, 1997); Affidavit in Support of Motion for Summary Judgment and Motion to Vacate Void Judgment (February 25, 1997); Motion to be Immediately Released from Illegal Detention (March 7, 1997); March 27, 1997 Letter (concerning the violation of defendant's Fifth and Thirteen Amendment Rights); May 8, 1997 Letter (alleging the government's fraud and the court's lack of jurisdiction); Traverse to Government's Response (July 7, 1997); Motion to Grant Declaratory Judgment and Injunctive Relief (July 31, 1997); February 4, 1999 Letter (concerning default judgment and status hearings); March 5, 1999 Letter (concerning proof of service and requesting defendant's conviction be vacated and set aside).

Mot. to Vacate and Set Aside Void Judgment of Sentence and Conviction, Aff. in Support of Mot. for Summ. J. and Mot. to Vacate Void Judgment.)

The government argues that many of Watson's claims are procedurally barred because they were filed after the one-year deadline provided by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and that his others were waived when he failed to raise them on direct appeal. In the alternative, the government asserts that each of Watson's § 2255 claims are without merit. (Id. at 3.)

## Analysis

I. **Time-Barred Motions**

Watson filed his first motion to vacate his sentence and conviction on January 31, 1997. Since his incarceration, he has filed numerous additional motions, letters, and petitions for his immediate release from prison. The government asserts that all Watson's petitions and motions dated after April 23, 1997 are time barred and the court is without jurisdiction to hear them under the AEDPA.

The government correctly notes that the AEDPA amended §2255 and imposed a one year statute of limitations on post-conviction collateral relief.

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of-
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by government action in violation of the Constitution or the laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255. The Seventh Circuit established that petitioners whose convictions were finalized prior to the effective date of AEDPA, April 24, 1996, could file federal habeas petitions until April 23, 1997. See Lindh v. Murphy, 96 F.3d 856, 866 (7th Cir. 1996) (en banc) rev'd

on other grounds, 138 L.Ed.2d 481, 117 S. Ct. 2059 (1997). Watson filed a number of his habeas petitions after April 23, 1997. Therefore, this court is prohibited by the AEDPA from hearing any of Watson's petitions filed after that deadline.[2]

The court must, however, recognize the many motions Watson filed within the AEDPA deadline.[3] Accordingly, the court will now examine Watson's remaining arguments.

## II. Jurisdictional claim

"Relief under § 2255 is only available if the trial court is guilty of 'an error which is [either] jurisdictional [or] constitutional. It [must be] a fundamental defect which inherently results in a complete miscarriage of

---

[2] As such, the court will not consider the following motions: May 8, 1997 Letter (alleging the government's fraud and the court's lack of jurisdiction); Motion to Grant Declaratory Judgment and Injunctive Relief (July 31, 1997); February 4, 1999 Letter (concerning default judgment and status hearings); March 5, 1999 Letter (concerning proof of service and requesting defendant's conviction be vacated and set aside).

[3] The court will only hear the claims Watson expressed in the following motions, petitions, and letters: Mot. for Unsecured Bond (filed January 31 1997), Mot. to Vacate and Set Aside Void Judgment of Sentence and Conviction (filed January 31, 1997), Aff. in Support of Mot. for Summ. J. and Mot. to Vacate Void Judgment (filed February 25, 1997), Mot. to be Immediately Released from Illegal Detention (filed March 7, 1997), and March 27, 1997 Letter.

justice....'" U.S. v. Joiner, 847 F. Supp. 604, 607 (N.D. Ill. 1994), citing Hill v. U.S., 368 U.S. 424, 427(1962). Watson makes one argument calling the court's jurisdiction into question.

Watson contends that he should be released from prison because the court did not obtain personal jurisdiction over him or subject matter jurisdiction over his case. (See Def.'s Aff. at 1.) The Federal Rules of Criminal Procedure govern all criminal matters prosecuted in the United States District Courts. See Fed. R. Crim. P. 1, 54(a). 28 U.S.C.A. § 547 gives the United States Attorney authority to prosecute offenses committed against the United States. See In Re Perlin, 589 F.2d 260, 266 (7th Cir. 1978). Therefore, Watson's violation of federal statutes in Chicago and Forest Park, Illinois brought him within the personal jurisdiction of the United States District Court for the Northern District of Illinois. Additionally, under 18 U.S.C. § 3231, the federal courts maintain exclusive original jurisdiction over "all offenses against the laws of the United States." When Watson pled guilty to federal criminal charges, he admitted wrongdoing against the laws of the United States. Therefore, the United States District Court for the Northern District of Illinois may

exercise jurisdiction over petitioner's case.

## III. Constitutional Claims

### A. Challenges to Conviction and Sentence

Watson also makes a number of arguments concerning his arrest. (See Def.'s Aff. at 1.) He charges that his Fourth and Fifth Amendment rights were violated because (1) he was unlawfully seized by DEA agents, and (2) he was not provided with proper due process. Specifically, he believes that his Fourth Amendment rights were violated when he was not properly notified that he would be seized by federal law officials and that his Fifth Amendment Due Process right has been violated because (1) he was not granted the opportunity to be heard, and (2) he is being detained illegally. (Id.) The government argues that Watson's Fourth and Fifth Amendment claims are foreclosed because he failed to raise these issues prior to trial or on direct appeal of his conviction. (Gov't. Resp. at 3-5.)

Under § 2255, a defendant may not raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2)

non-constitutional issues that could have been, but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the § 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal. See Belford v. United States, 975 F.2d 310, 313 (7th Cir.1992), overruled on other grounds by, Castellanos v. United States, 26 F.3d 717, 719-20 (7th Cir.1994); Norris v. United States, 687 F.2d 899, 900 (7th Cir.1982); United States v. Herrera, 918 F. Supp. 243, 246 (N.D. Ill.1996).

Since Watson failed to bring these Fourth and Fifth Amendment claims prior to trial or on direct appeal, unless he can show cause for his failure and actual prejudice resulting from that failure, he cannot collaterally raise the issues in a habeas action. Watson claims that he was illegally seized, but, as explained above, he was arrested because he was suspected of participating in criminal activity. Subsequently, he admitted to the police that he sold narcotics and possessed a firearm. Moreover, DEA agents were authorized to arrest Watson. Watson has not shown any evidence that his procedural or substantive due process

rights were violated before or after his arrest. He was arrested and convicted of a federal crime to which he voluntarily pled guilty. He was given ample opportunity to be heard and was provided counsel to explain the legal consequences of his illegal conduct.

Next, Watson claims that there was insufficient evidence to prove that he committed any crime. This argument also should have been directly appealed and unless Watson has evidence to demonstrate good cause or prejudice, he was waived the right to raise it here. See Belford, 975 F.2d at 313. He does not provide any reasons why this issue was not raised on direct appeal nor does he demonstrate how he may have been prejudiced.

Finally, Watson argues that the court imposed upon him a prison sentence beyond its statutory authority. (See Mot. to be Immediately Released at 2, March 27, 1997 Ltr. at 2.) Under 28 U.S.C. § 2255, federal prisoners can challenge the imposition or the length of their detention "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was

in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . " 28 U.S.C. § 2255. If the court determines that any of these grounds exist, "the Court shall vacate and set the judgment aside and shall discharge the prisoner, or re-sentence him or grant a new trial or correct the sentence as may appear appropriate." Id.

Watson has waived the right to raise this argument as well, having not raised it in a direct appeal. Furthermore, he has not shown any evidence that his sentence was imposed in violation of the Constitution, laws of the United States, without jurisdiction, or exceeded sentencing guidelines. Watson asserts that in a civil action imprisonment is beyond authority of the court. This is a criminal case and the court has the authority to sentence people found guilty of federal crimes. See 18 U.S.C.A. § 3551 (West 1999). Watson was sentenced in accordance with the federal sentencing guidelines for the crimes he committed. The court explained to Watson the possible amount of prison time he could receive for his crime and he stated that he understood. (Audio Tape of Watson's Sentence Hearing Oct. 13, 1995.)

## B. Cause and Prejudice

Having waived his constitutional arguments by failing to bring them on direct appeal, Watson seeks to show cause by arguing that he had ineffective assistance of counsel. He argues that his conviction and sentence should be set aside because he received misleading legal advice from ineffective counsel concerning his plea agreement. Specifically, Watson asserts that he was "fraudulently induced" into signing the plea agreement, that he signed the guilty plea under "duress" without all the "facts" being revealed to him, and that his counsel was working "in concert with the prosecution" to convict him. He also alleges that his attorney told him if he went to trial he could face a sentence of 17 years or more. (See Letter March 20, 1997 at 20; Aff. Mot. Summ. J. at 1.)

In Murray v. Carrier, 477 U.S. 478 (1986), the Court held that ineffective assistance of counsel may constitute "cause" for a procedural default. A petitioner may demonstrate ineffective assistance of counsel by showing: "(1) counsel's representation fell below an objective standard of reasonableness (the performance prong); and (2) there is a reasonable probability that, but for the counsel's professional error, the result of the

proceeding would have been different (the prejudice prong)." Strickland v. Washington, 466 U.S. 688, 694 (1984). Watson claims that he entered into the plea agreement unknowingly because he was not presented with all the pertinent facts. He implies that he would have fared better if he had not signed the plea agreement and went to trial. Nothing in the record suggests the representation Watson received fell below an objective standard of reasonableness.

At his plea hearing Watson indicated that his counsel provided him with all the necessary information about his case to make an informed decision on entering a guilty plea and that he was satisfied with his counsel. Watson claims his attorney told him that he could receive 17 or more years of prison. This was not a misrepresentation. At Watson's sentencing hearing the judge told him that, if he was convicted of all the government's charges, he could receive a total of 85 years. His attorney was correct in his assessment that Watson could be sentenced to a prison term of 17 years or more if he did not sign the plea agreement. Petitioner has not demonstrated that his counsel's performance fell below an objective standard of reasonableness, nor that there was a reasonable

probability that, but for his lawyer's "bad advice," the result of the proceedings would have been different. Watson's ineffective counsel claim does not satisfy the cause or prejudice standard.

Watson also seeks to attack the validity of his guilty plea. A guilty plea is considered constitutional if it is rendered voluntarily and intelligently. See United States v. Ellison, 835 F.2d 687, 688 (7th Cir. 1987); see also Taylor, 933 F.2d at 327. A guilty plea is more than a confession, it is an admission that defendant committed the charged offense. See Boykin v. Alabama, 395 U.S. 238, 242 (1969). Hence, ordinarily, a convicted defendant may not collaterally attack a voluntary and intelligent guilty plea. Id. However, if petitioner demonstrates that the plea was entered into unknowingly and involuntarily, he or she may attack the plea agreement. United States v. Brown, 870 F.2d 1354, 1358 (7th Cir. 1989); United States v. Mendoza, 1994 Nos. 89 Cr 741-8, 93 C 8228 WL 141976 (N.D. Ill. 1994).

Watson claims his plea was invalid and not given with consent. The record suggests otherwise. Before a trial court may accept a guilty plea, it must ensure that the defendant "has a full understanding of what the

plea connotes and of its consequence." See United States v. Henry, 933F.2d 553, 559 (7th Cir. 1991). When Watson signed his guilty plea, he waived his right to challenge the constitutionality of the conviction unless the decision was based on: (1) an impermissible factor, such as race or gender, or (2) a sentence exceeding the statutory maximum. See United States v. Williams, 184 F.3d 666, 669 (7th Cir. 1999). In this instance, Watson does not provide any factual evidence that his conviction was decided on unconstitutional grounds.

The court ensures that a plea is made voluntarily through personal interrogation. United States v. Ellison, 835 F.2d 687, 693. (7th Cir. 1987). In accordance with Rule 11(d) of the Federal Rules of Criminal Procedure the "trial judge [must] ask[] the defendant specific questions concerning the voluntariness of the plea agreement." Id. "The only rational manner in which a judge may determine whether a plea is knowingly and voluntarily made, is to observe the defendant's demeanor and responses to the court's questions and rely on the defendant's sworn answers." Id.

On April 24, 1995, this court held a guilty plea proceeding to

establish that Watson fully understood the charges against him. (Audio Tape of Watson's Plea Hearing (April 24, 1995.)) At the plea proceeding the court asked Watson if he clearly understood the following: (1) the government's indictment against him, (2) the consequences of entering a guilty plea, (3) if his plea was entered voluntarily, (4) if he and his lawyer discussed the sentencing guidelines applicable to his case, and (5) if he was advised of his trial rights, his right to appeal his guilty plea and sentence. He was also asked about his satisfaction with counsel. (Id.) Watson indicated that he had spoken to his attorney concerning the details of his case and fully understood what would occur at the plea hearing. (Id.) The court determined from Watson's answers that he was competent to enter a guilty plea. ( Id.) At no point did Watson mention that he was fraudulently induced, under duress, or forced to sign the plea agreement. His plea hearing indicates that he understood fully the meaning of entering a guilty plea.

Because Watson has not demonstrated cause for his failure to raise his constitutional claims prior to trial or on direct appeal, and can show no actual prejudice, he is barred from raising them in a §2255 petition.

Therefore, the court denies Watson's petition for relief.

## Conclusion

For the reasons set forth above, the court dismisses Watson's Motion to Vacate and Set Aside Judgment and Sentence under 28 U.S.C. § 2255.

**ENTER:**

*Ann Claire Williams*

**Ann Claire Williams,
Judge**

**Dated: April 25, 2000**
g:\civ.opn\Watson.wpd